Good morning, Your Honors. If it pleases the Court, I am here on behalf of Mr. Rodriguez-Soriano, and we're here to discuss a reduction in sentence motion that he filed pro se and that my office worked on, tried to assist the Court on. I guess it's a little unusual for me to be standing here with the government supporting me. It is. We don't see him very often. But I actually took that as a signal that the Court had concerns about where we were going together, even. That's perceptive. And I'm trying to be prepared here to address those concerns. I think the three cases that I need to discuss quickly would be Freeman, Davis, and Williams from the Fourth Circuit. Freeman, in our view, actually overruled Jackson via Davis. Freeman, as we see it, is sort of a capacious decision. And it's as if, I think, if the guidelines play any role in the decision, then they're a factor. And if they're a factor, you can Mr. Onoho, Judge Malloy, I think, rightly observed that because this was a mandatory minimum life sentence, the guidelines, I mean, I guess you could say that became the guideline, but it's not a range. It's the mandatory minimum. There can't be anything beyond life. So it's difficult for me to conclude that when you start at that point, and then he comes down to, what are we now at, 200 and something months, 215, that it's in any way based on the guidelines. All right. Well, I guess it's funny. I argued Jackson in 2009. And Judge Tashima wrote that opinion. And that's all about based on. And that Jackson opinion says without qualification that in my case, the statutory minimum case, the Jackson case, it was not based on. But if you look at that progression from 2009 forward to include all of the amendments to the guidelines, the momentum of all of that, including Freeman and including Davis, you can see that it widens. It just consistently widens. But counsel, don't we have to really examine the transcript to figure out what happened at the original sentencing? Because we know from, for example, for the dissent in Davis argued that the problem was that a sentencing judge, of course, always has to start with the guidelines calculation. Correct. Always. But that doesn't mean that it's really, the sentence is really based on the guidelines calculation. So the dissent argued and the majority disagreed quite strongly that just because the guideline is, it's always going to be there. It's always going to be step one, really, has to be. That doesn't mean it's the sentence is really based on that guideline, right? Well, but I guess I didn't want to short-circuit this, but I guess you got to go to the guideline amendments as they stand today. And I think that truncates all of those, that analysis. But why does it, but it doesn't trump the statute. See, there's two parts to the statute, the based on, and then, of course, it has to be a range that's resulting from this change. And so the first part, the based on, if you look at Davis as the most recent pronouncement, it's not enough to calculate a guideline, they say. It has, if you decide a sentence for reasons unrelated to the guideline, it seems here that Judge Malloy did that. And I appreciate your comment about, you know, the progression from Jackson. And so I could see a case, it doesn't have to do that it's just a mandatory minimum, I could see a case where you could have a mandatory minimum and you might well fall in this. But if you take the Davis language and if the decision is made, quote, for reasons unrelated to the guidelines, how do you meet the statute here? Well, I guess I have a couple of responses to that, Your Honor. First is, I think we need to keep our eye on the ball here that this is an eligibility determination. Does he qualify to be considered for the relief? But the relief is substantial assistance. But it does, what I'm suggesting is that, and I don't want to talk myself out of a remedy here, but the way Your Honor framed that question and the good things that Your Honor said, I think that can get resolved under the distinction between eligibility and actually granting the relief. The court could always say, you know, enough is enough here. I went down twice, you had your substantial assistance, you got what you bargained for. I don't think you're deserving of another reduction under the amendment, although it applies to you. But the test, the two-part test in 3582 is eligibility. But I think that is what we're asking. But the guideline amendments take the 5G1B1 out of the mix now. So that was the argument in Jackson. The argument in Jackson was that you had to start and then go up to the mandatory minimum and that was squarely rejected by this court. It seems to me, I just want to give you a chance to respond because here's what's bothering me. Under 3582, of course, it's a two-part test as Judge McEwen just indicated. And so it seems to me that what's out of the mix is the reduction is consistent with the applicable policy statements. In other words, it would be consistent in a 5K, you know, situation to grant a 3582 motion and deem this person eligible for a sentence reduction. And I'm not getting the distinction. I mean, you can deem them eligible, but you can deny relief. Well, but the eligibility is for relief from the mandatory minimum, not from the guideline range in this case. But the guideline range was used to go up under 5G1B1. And the policy statement now under... I don't agree with that premise. I mean, the problem is the statute says that for a two-time offender, it's a mandatory minimum of life sentence without release. And that is Congress's determination, not the sentencing commission. And I think Judge McEwen was right when she pointed out in her question that the commission cannot trump a statutory enactment of Congress. The commission doesn't have that power. So what the district court was looking at here was an offender who was otherwise going to get life without parole, and the government was trying to obtain some sort of relief in the form of a carrot, an incentive to continue testifying against other members of the criminal organization. And that is an exception to the mandatory minimum. That renders him eligible for a sentence below life without parole if he performs to the satisfaction of the government. But that doesn't have anything to do with the guideline. It has everything to do with an exception to a mandatory statutory minimum. But I think what's left out of the mix there, Your Honor, respectfully, with regard to the statutory analysis, is that we had 3553E in play here, too. So that's a statutory source of relief from that mandatory minimum, that statutory mandatory minimum, that is promulgated in the guidelines. I mean, under Your Honor's reasoning, I suppose we could just plead a guy to a drug crime that has two priors and it's life sentence and we're done. That's not how that works. You still have to have the pre-sentence report calculated. You still have to do 3553E. You have to go through all of that analysis to include the original guideline. But in that situation, don't you agree that there are only two ways that the sentence could be less than life? Either through substantial assistance or, I suppose, I don't know how you would qualify under a Rule 35 motion. I think that would have to come also from cooperation. But there might be some ground that the district court could later grant Rule 35 relief. Right. And he had both, and he had 3553E relief in play here as well. So I just think that But I'm not sure that that helps us resolve the question of whether or not the sentence was based on the guidelines. That's, I guess, where I'm having the big... Maybe the concern, as I'm hearing it, is that the Sentencing Commission does not have the statute, and that that's what they're trying to do here? If you look at Judge Traxler's dissent in the Fourth Circuit case, he says that he articulates it pretty well. And I think he's right on in his analysis. I don't think that's my only concern, for what it's worth. I think that is a concern. But I think the other part, for me, is that under the statute, you have to have both. You have to have a sentence, a reduction that's consistent with the policy, and that's going to be consistent with what you're seeking, would be consistent with 1B1.10C. But it also has to have a sentence that was actually based on. And I don't see this one as being based on. Well, it looks like I'm out of time, Your Honor. Thank you. All right. We'll hear from the government. We recognize this is an unusual situation where the government concedes error, and normally you would shake hands and go home. And you can fix it. But, of course, when that was done, that was before the Davis case, as I understand it. So our first question to you, I'll let you introduce yourself, will probably be, did Davis do anything, or have you had any second thoughts on your way over here? My name is Joe Thagard. I'm an assistant U.S. attorney from the Montana, and I represent the government in this matter. I have not changed my mind. Okay. I do think Judge Malloy, as he expressed in the Cruz case, in an opinion which we provided the court in a 28-J letter, was, of course, concerned that at that point the circuit was still adhering to the notion that the concurrence in Freeman was, in fact, the opinion of the court was that the plurality was. And then the plurality, at least as I read it, talks about the fact that we at least need to consider whether or not a court has, in some sense, considered the guideline range if it's played some role in the outcome of the final sentence. Well, I think But it's always going to play some role. I don't think it says that. I don't think that's what the majority says. I think that's That's what the dissent wished it had said. Sure. Fair enough. Isn't the starting point what was suggested by Judge Christin, that in light of Davis, what we need to do is go back and look at the transcript of what the court actually did at the sentencing proceeding? I think that we do need to do that in this instance. And in looking at that, the court, of course, did, as it's required in every case, go through the initial steps in 1B1.1. It calculated the offense level, the base offense level, the total offense level, the criminal history category. And then it noted, of course, that in this instance, the government had filed this 851 information. And, you know, lo and behold, the sentence is  Absolutely. So the guidelines don't have anything to do with the fact that the defendant is now looking at life without parole once you file the 851 enhancement motion. That's correct, Judge. And in fact, I would concede that, maybe I'm conceding too much, but in the Williams case with the dissent, I think that the dissent was correct, that the guidelines can't modify something that Congress has done. Right. But there was a 3553E motion filed in this instance. Right. And so, of course, the sentencing court was freed from having to impose a life sentence. And certainly I think that subsection C of the guidelines is able to say that 5G1.1 does not apply in this sort of an instance. But returning to your question, the court made that initial calculation. And then it was interesting that both the court and the government, in trying to fashion a sentence in this case, did make reference to the guidelines. Now, it did not make reference to the guideline range that it had calculated, which I think was 97 to 121 months. Right. But the AUSA, Mr. Ubley, who has conveniently gone off into retirement, did talk about, he came up with a guideline range of, I think it would have been the equivalent of a total offense level of 37 and a criminal history of 2, a category of 2. And Judge Molloy felt that that was a little bit too generous and said, no, I think that's something more in accordance with a level 38 criminal history 2. But would you agree that what the court was trying to do, and Judge Molloy said it several times, was not only to punish what is now a three-time offender, but also to provide some incentive to continue cooperating with the government in the hope that if he satisfactorily performed and you granted or made a 5K1 motion, that the court would reconsider and perhaps even further reduce? I do agree that that's... That's what happened. And that's what happened, yeah. That's true. That's true. I mean, the guideline calculation, as I read it, was pretty much as you stated. It was a faux guideline in a way, because it didn't have anything to do with this, you know, what was being reduced, actually. It had to do with, like, sort of a construct and, of course, Judge Molloy, too, everybody wanted to give him some incentive to help out, and given his age, not only to help out but to possibly get out eventually. And so I think your colleague was, like, constructing a fair look at this, but then when all that is said and done, we still have to go back to the statute and say whether it was based on. So I don't think that... It just didn't seem that that faux construct actually is the foundation for the sentence. That's where I think, at least I'm hearing my colleagues as well, we're having kind of a gap here. But it seems to me, just if I could just pile on, I think it could be, I think it could have been, which just goes back to my point where I think we have to really parse the transcript and look to see what actually happened in the case. I mean, that's how I reconciled this guideline, 1B1.10C, that they're allowing for the fact that even though there's a mandatory minimum, in the right case, if there's substantial cooperation and we can tell from the transcript that the sentence was in fact based upon a mandate, then I can imagine that that, that there would be sentence reduction eligibility. I just don't see it here as a matter of fact, not as a matter of law. And if I can add to that, I think what, I think what, if you want to respond. You will, pretty soon you'll get a chance to respond. Go ahead. If you want to respond. And then first you can object that it's a compound question. Which will be sustained. I don't think I even asked one, but go ahead, Judge Domenico. Well, I was just going to say, you know, for those of us who, who were raised in the salad days before there were sentencing guidelines, I find it a little bit ironic that at one time they were, they were mandatory. And then the Supreme Court said, you can't do that. They can only be advisory. And in essence, what you're asking us to do is to go back and make them mandatory and say that the court must look at the guidelines and impose a sentence that's based on the When the transcript here indicates that wasn't what the sentencing court was doing at all. It was trying to, to fashion a sentence that would both punish, but no greater than necessary and still provide an incentive to an older offender that if he cooperated, he might still see the light of day while he was still alive. Well, I, again, in returning to what Mr. Donohue had said, you know, this is about eligibility. And so certainly I'm not suggesting that even if, if it were to be found that this defendant were eligible, that the court would be required to impose a sentence reduction. I mean, if we sent it back down, I suspect that Judge Malloy could easily impose the same 215 month sentence by saying, look, I've already granted them two reductions and enough is enough. And, and I think that that would be reasonable on the court's part. And, and we say to that in our brief, again, I think he was, you know, it's simply our position that he just has to just consider it. You know, the other thing I would note is we've got this additional component in here and I don't know how much it changes the analysis, but there was in fact a rule 35 motion granted in this case, which is why we're at 215, which is why we're at 215. And so, you know, the court again, then made, made a further reduction. We don't have an explanation there as to how the court arrived at that. It didn't refer to the otherwise applicable guideline range, but that did occur in this case. Yeah. I guess the final thing that I would just add is, you know, we do have in-ray sealed case out there and, and it talks about, and we have Savani and I realized that those cases preceded the, the guideline modification, but the guideline modification certainly was attempting to implement those cases. And Williams in looking at those has said, well, you know, that's, that is a sufficient reason at least in the Fourth Circuit to overrule Hood, which in my reading of it is, is very similar to Jackson. And so I think that we need to take that into account. And you know, the other thing that I would, would simply note is that the Jackson itself, when Mr. Donahue had argued it, raised this point that, well, you know, the guideline is always calculated. And so in some sense it's, it's based on a reduction could be based on that. And that was rejected by the court. Let me just ask you kind of an off the wall question. If the sentence was reduced under rule 35, was that sentence based on the guidelines? Well, I, I, and that's an interesting question because it's, you know, rule 35 just addresses a post-sentence reduction. It empowers the district court to do something that the statute otherwise forbids the court from doing. Exactly. And it also, it also provides that the district court can essentially impose whatever sentence it feels regardless of the mandatory minimal. So you don't even require 3553E in that instance. Right. Right. And so to be, to be honest with you, that is a, a beast that I think takes us entirely outside of the guidelines. Right. That's, that's. Let me ask you, is your position tailored to this particular case or does it represent some larger strategy or view of DOJ? Well, I, I, I think, and I don't want to be evasive, but actually both. I think in this particular case, when you look at it, there were these discussions of the guideline calculation, these, these efforts to sort of create another guideline by the court and by the AUSA. And so I think that those in this particular case suggest that this is the right outcome. But this is, you know, without a doubt, a part of a larger approach by DOJ and the sentencing commission in this area was smart on crime. And I, and I do think that that is part of certainly a recognition that this particular defendant, this particular kind of defendant who has cooperated is in some respects a special defendant. But what more do you need besides 5K1.1 and Rule 35? I mean, if this is really a problem, why doesn't the department just go back to Congress and say we need a change in the law? Well, I, I think that once a 3553E is filed, really it's something that if we have this whole other category of defendants who are getting 3582 relief, you know, we shouldn't necessarily. But that started with the crack versus powder cocaine problem. And now the commission has moved on to other areas of the guidelines where they think that perhaps Congress has been a little overzealous with mandatory minimum sentences. Which leads back to my question, rather than do it this way, why doesn't the department just go to Congress and address the issue head on? Well, I think it, I think it could. And, and I don't know that I would say that that is necessarily an easier approach. I'm not, I'm not suggesting that. I'm just suggesting. It might take longer. It, it, it might take longer, you know, but the fact of the matter is ultimately we were freed from, from the mandatory minimum by 3553E. There is this, this amendment to the guideline and, and I think under these circumstances, really the amendment to the guideline modified 5G 1.1, not the mandatory minimum itself. And, and I think in, in those circumstances, you can say that sentence was based on, at least in part, on this lower guideline range. Thank you. Thank you. Do you have anything to add or are we basically, the issue is joined? May I, just one moment? Sure. Thank you. I, you know, tried to follow the discussion closely here and this has been ringing around my head and I got some clarity on it while I was sitting there. I mean, when you think about it, the question I think that Judge Tolma propounded about how the sentencing actually worked itself out and that Judge Molloy's saying, well, the government's suggesting maybe it should be level 38 and, or 37 and, but Judge Molloy wound up at 38. Once that 3553E motion was filed, those ranges and the subsequent discussion all implicate the guidelines and a level. And they were decisions made under the guidelines. And in Freeman, Justice Kennedy says that even where the judge varies from the recommended range, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the guidelines are in a real sense a basis for the sentence. But, but you're basically taking the position that the Supreme Court did not adopt in Freeman, which is that every sentence is based on the guidelines and they couldn't get a majority for that proposition. But I think Davis answers that question. Okay, well, we'll take another look at Davis. Thank you. Thank you both for your arguments, unusual case, as you pointed out. United States v. Rodriguez-Oriano is
judges: McKeown, Tallman, Christen